**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **LONG ZHANG,** | |
| *Plaintiff,* | **Case No. 1:22-cv-05057** |
| v. | **Judge Marvin E. Aspen** |
| **UAB EKOMLITA,** | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

**REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ENTRY OF**
**A PRELIMINARY INJUNCTION**

Plaintiff Long Zhang ("Plaintiff" or "Zhang") respectfully submits this Reply to Defendant UAB Ekomlita's ("Defendant") Response to Plaintiff's Motion for Entry of a Preliminary Injunction ("Response"), and, in support thereof, respectfully states as follows:

## I. INTRODUCTION

Defendant's arguments contradict the well-established jurisprudence of the 7th Circuit and this District. Although a preliminary injunction is an extraordinary remedy, at this preliminary stage, Plaintiff does not need to show that it will definitively win its case. "[P]roof by a preponderance" is not required, as "that would spill too far into the ultimate merits for something designed to protect both the parties and the process while the case is pending." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). Instead, Plaintiff must show is a mere "reasonable" likelihood of success. *See, e.g.*, *AM Gen. Corp. v. Daimlerchrysler Corp.*, 311 F.3d 796, 803 (7th Cir. 2002) (the party seeking a preliminary injunction "has the burden of demonstrating that it has a reasonable likelihood of success on the merits of its underlying claim, that it has no adequate remedy at law, and that it will suffer irreparable harm without the preliminary injunction."); *Data Mgmt. Ass'n Int'l v. Enter. Warehousing Sols.*, No. 20 C 04711, 2020 U.S. Dist. LEXIS 242699 at *4 (N.D. Ill. Dec. 28, 2020) ("As such, a party seeking preliminary relief must "make a threshold showing that: (1) absent preliminary relief, [it] will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) [it] has a reasonable likelihood of success on the merits."). The reasonable likelihood standard "normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Pritzker*, 973 F.3d at 763. The "likelihood of success," as such, depends on the facts of the case at hand due to the sliding scale approach. *Mays v. Dart*, 974 F.3d 810, 822

(7th Cir. 2020). Here, there is sufficient credible evidence showing that Plaintiff can prove it has a valid trademark at trial.

The purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial on the merits can be held. *Keystone Consol. Indus. v. Midstates Distrib. Co.*, 235 F. Supp. 2d 901, 903 (C.D. Ill. 2002). "A certificate of registration of a mark … shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the *owner's exclusive right to use the registered mark in commerce* on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate." 15 U.S.C. § 1057(b) (emphasis added). Here, Plaintiff's exclusive right to use the registered mark in commerce is precisely the *status quo ante* that this Motion would preserve. As such, the Court should issue a preliminary injunction against Defendant so that Plaintiff's exclusive right to use the registered mark in commerce is upheld for the pendency of this action.

Importantly, the absence of such preliminary injunction against Defendant will cause irreparable harm to Plaintiff. "In a trademark infringement case, damages are by their very nature irreparable and not susceptible of adequate measurement for remedy at law." *Charter Nat'l Bank & Tr. v. Charter One Fin., Inc.*, No. 01 C 0905, 2001 U.S. Dist. LEXIS 6531 at *6 (N.D. Ill. May 15, 2001) (quoting *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988)). Tellingly, Congress reinstated the presumption of irreparable harm for violations of the Lanham Act by passing the Trademark Modernization Act of 2020, effectively overruling the Supreme Court's 2006 decision in *eBay Inc. v. MercExchange*, 547 U.S. 388 (2006). *See* 15 U.S.C. § 1116(a) ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm…"). Moreover, damage to Plaintiff's goodwill constitute

irreparable harm for which Plaintiff had no adequate remedy at law. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002). Defendant has conceded that both the products and marks at issue are nearly identical, a fact tending to show that the likelihood of confusion is relatively high. As such, the Court should assume Plaintiff's loss of goodwill and exclusive control is substantial. *See Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013).

Therefore, as Plaintiff has sufficiently shown, it has a reasonable likelihood of success on the merits of its underlying claim, that it has no adequate remedy at law, and that it will suffer irreparable harm without the preliminary injunction, the Court should grant Plaintiff's motion and issue a Preliminary Injunction against Defendant.

## II. ARGUMENTS

### A. Plaintiff Has Shown Its Reasonable Likelihood of Success on the Merits.

#### 1. *Credible Evidence Sufficiently Proves Plaintiff's Proffered First Use in Commerce Date.*

Plaintiff started using the HUUSK Mark in commerce as early as February 12, 2020. *See* Dkt. No. 16 at 3. To support such first use in commerce date, Plaintiff has submitted its Amazon product listing screenshot to the USPTO, which shows the "Date First Available" of its HUUSK marked products as February 12, 2020. Dkt. No. 36-10 at 12. Courts in this District routinely rely on this type of evidence at this preliminary stage to determine the first availability date of products. *See, e.g.*, *Peng v. The Partnerships*, No. 21-cv-1344, 2021 U.S. Dist. LEXIS 174254 at *15-16 (N.D. Ill. Sep. 14, 2021) (granting Plaintiff's preliminary injuncting motion after finding that plaintiff publicly disclosed his invention by March 27, 2019, the date it was "first available" on Amazon.com). As such, credible evidence shows that Plaintiff's first use in commerce date is, as Plaintiff states in its PI motion, February 12, 2020.

On the contrary, Defendant failed to proffer credible evidence to support its alleged first use in commerce date. The term "use in commerce" is defined as "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. The concept of territoriality recognizes that "a trademark has a separate legal existence under each country's laws and is afforded protection by those laws." *Baig v. Coca-Cola Co.*, 2009 U.S. Dist. LEXIS 44184, 2009 WL 1470176, at *6 (N.D. Ill. May 27, 2009) (internal citations and quotations omitted); *see also Person's Co., Ltd. v. Christman*, 900 F.2d 1565, 1568-69 (Fed. Cir. 1990) ("The concept of territoriality is basic to trademark law; trademark rights exist in each country solely according to that country's statutory scheme.").

Defendant alleged that it purchased the domain name www.huusk.com on July 30, 2020. Dkt. Nos. 36-1 and 36-2. However, merely acquiring a domain name is not a commercial use. *See Juno Online Services v. Juno Lighting, Inc.*, 979 F. Supp. 684, 691 (N.D. Ill. 1997) ("The mere 'warehousing' of the domain name is not enough to find that defendant placed the mark on goods or 'used or displayed [the mark] in the sale or advertising of services' as required.") (quoting 15 U.S.C. § 1127).

Defendant also presented evidence regarding its "marketing campaign." Dkt. No. 36-4. However, such evidence does not show that such campaign was done in the United States, targeting U.S. customers. Indeed, the second page of this evidence is not even written in English. This is further evidenced by the fact that Defendant's Facebook page has been managed by people who reside in Lithuania, the Philippines, and Germany. *See* Exhibit A. As such, Defendant's evidence does not show that Defendant used the HUUSK mark in United States commerce through its proffered "marketing campaign."

Defendant further proffered evidence of its overseas trademark applications[1]. Dkt. Nos. 36-1 & 36-8. However, under the concept of territoriality, such applications cannot be used as evidence to show that Defendant used the HUUSK mark in United States commerce. *See In re Bayer Aktiengesellschaft*, 488 F.3d 960, 969 (Fed. Cir. 2007) ("Evidence of registration in other countries is not legally or factually relevant to potential customer perception of Bayer's analgesic goods in the United States."). Moreover, "[P]riority of trademark rights in the United States depends solely upon priority of use in the United States, not on priority of use anywhere in the world" because "[e]arlier use in another country usually just does not count." *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1093 (9th Cir. 2004) (citations omitted).

Defendant's "UAB ordered knife products for HUUSK marked goods" evidence encounters the same problem. Nothing in this document shows that Defendant used the HUUSK mark in United States commerce. *See* Dkt. No. 36-11. Rather, Defendant ordered the product from a Chinese vender to its own address in Lithuania. *Id*. Ordering unmarked goods from China to your office in Lithuania does not constitute using the mark in United States commerce.

Defendant then proffered invoices that were allegedly issued from March 8, 2021, to May 30, 2021. Dkt. No. 36-5. In total, Defendant sold a nominal 11 products. *Id*. To use Defendant's own words, "[i]n general, uses that are *de minimis* may not establish trademark ownership rights" and "[t]rademark rights are not created by sporadic, casual, and nominal shipments of goods bearing a mark." Dkt. No. 36 at 12 (citations and quotations omitted). Since all of Defendant's activities proffered to show use of the mark in United States commerce were actually done outside

---

[1] The "Exhibit F EUIPO 018451244 Application" and "Exhibit G EUIPO 018451244 Registration Certificate," Dkt. Nos. 36-6 & 7, are blank papers in the ECF system. Plaintiff moves to strike these two exhibits.

of the United States, minus such *de minimis* sales in the United States, Defendant is not entitled to priority of the HUUSK Mark in the United States.

The only rebuttal evidence that Defendant proffered is an Amazon forum posting. Dkt. No. 36 at 5. Such posting, however, is made *anonymously*, on the forum's "sellercentral-*europe*" section. *See Id*. n. 4. Since posted two years ago, the page was viewed a mere 516 times and received only one reply. Exhibit B. Such scant evidence bears no probative value.

### 2. *Plaintiff Continuously Offered to Sell Products under Its Mark.*

Plaintiff wrongfully relies on *Avakoff v. S. Pac. Co.*, 765 F.2d 1097 (Fed. Cir. 1985) to argue that Plaintiff has to prove its continuous use of the mark at this stage. *Avakoff* is a case where the Court had to rule on the "use in commerce" issue for a trademark application. *Id*. at 1097-98. In comparison, Plaintiff's Mark has long passed the application stage. The USPTO has already determined that Plaintiff used its mark prior to filing its application when reviewing the evidence Plaintiff submitted together with its trademark application. Defendant does not, and cannot, contest that the USPTO has already issued the certificate of registration of the HUUSK Mark to Plaintiff. This constitutes *prima facia* evidence of the validity and registration of Plaintiff's HUUSK Mark.

Trademark rights "can vest even before any goods or services are actually sold if the totality of [one's] prior actions, taken together, [can] establish a right to use the trademark." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1052 (9th Cir. 1999) (cleaned up). As discussed above, Plaintiff has proffered credible evidence showing that it has linked the HUUSK Mark with its products since no later than February 16, 2020. Together with the continuance record of offering to sell and selling its HUUSK branded products on Amazon, Plaintiff has sufficiently shown that the HUUSK Mark is valid.

**B. Plaintiff Has Sufficiently Shown that It Will Suffer Irreparable Harm.**

As has been extensively discussed above, Plaintiff has sufficiently shown that it has a reasonable likelihood of success on the merits of its underlying claim. As such, Plaintiff enjoys the statutory presumption of irreparable harm. 15 U.S.C. § 1116(a). Defendant failed to rebut this strong presumption as discussed above. Defendant has also sold its products in the United States, the same market where Plaintiff sells its products. *See* Dkt. No. 16-1 at ¶ 13; *see also* Dkt. No. 36 at 11. This also leads to finding of irreparable harm. *Nat'l Fin. Partners Corp. v. Paycom Software, Inc.*, 2015 WL 3633987, at *12 (N.D. Ill. June 10, 2015). Defendant's sale of goods in the United States diminishes Plaintiff's ability to control the quality of the products bearing the HUUSK Mark, thereby damaging Plaintiff's goodwill. *See* Dkt No. 16 at 9-10; Dkt. No. 16-1 at ¶ 10. This also supports a finding of irreparable harm. *See Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (damage to the plaintiff's goodwill constituted irreparable harm for which the plaintiff had no adequate remedy at law).

**C. It Is in the Best Interest of the Public to Grant Plaintiff's Motion and Enter the Preliminary Injunction**.

Additionally, Defendant has been profiting from the sale of products bearing Plaintiff's Mark in the United States, and accordingly, on the basis of monetary damage alone, the potential harm to Plaintiff outweighs any harm to Defendant. *See Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, 2016 U.S. Dist. LEXIS 144660 at *27-28 ("[T]he potential harm to Plaintiffs outweighs any potential harm to Defendant because any harm to Defendant in this matter is purely monetary which would be gained at the expense of Plaintiffs through unauthorized use of Plaintiffs' registered trademarks."). The public interest would similarly be served because the injunction prevents consumer confusion in the marketplace. *Promatek Indus., Ltd.*, 300 F.3d at 813-14; *see*

*also Luxottica Grp. S.p.A.*, 2016 U.S. Dist. LEXIS 144660 at *28 ("Enforcement of the trademark laws prevents consumer confusion and serves the public's interest in not being deceived . . . .") (internal citations and quotations omitted). Thus, it is in the best interest of the public to grant Plaintiff's Motion and enter the preliminary injunction.

## III. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Entry of a Preliminary Injunction.

DATED December 11, 2022.

Respectfully submitted,

By: */s/ Timothy T. Wang*
Timothy T. Wang
Texas Bar No. 24067927
twang@nilawfirm.com

**NI, WANG & MASSAND, PLLC**
8140 Walnut Hill Ln., Ste. 500
Dallas, TX 75231
Tel: (972) 331-4600
Fax: (972) 314-0900

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of December, 2022, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Timothy T. Wang*
Timothy T. Wang