**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LONG ZHANG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:22-cv-05057 |
| v. | ) | |
| | ) | Judge Marvin E. Aspen |
| UAB EKOMLITA | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Long Zhang, an e-commerce vendor, owns federal trademark no. 6,724,851, which is a standard character reading "huusk" (the "huusk Mark"). Zhang filed this trademark infringement suit under the Lanham Act to prevent his competitor, Defendant UAB Ekomlita ("UAB"), from selling counterfeit huusk products on its website. (*See generally* Original Complaint ("Compl.") (Dkt. No. 1).) Zhang subsequently moved for a preliminary injunction. (Plaintiff's Motion for Entry of a Preliminary Injunction (Dkt. No. 15); Memorandum in Support of Plaintiff's Motion for Entry of a Preliminary Injunction ("Pl.'s Prelim. Inj. Mem.") (Dkt. No. 16).) UAB responded by moving to dismiss Zhang's Complaint under Federal Rule of Civil Procedure 12(b)(6) and filing its own motion for a preliminary injunction. (Defendant's Motion to Dismiss Plaintiff's Complaint (Dkt. No. 32); Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def.'s Rule 12(b)(6) Mem.") (Dkt. No. 33); Defendant's Motion for a Preliminary Injunction (Dkt. No. 46); Memorandum of Law in Support of Defendant's Motion for a Preliminary Injunction ("Def.'s Prelim. Inj. Mem.") (Dkt. No. 47).) For the following reasons, we deny UAB's motion to dismiss, deny UAB's motion for a preliminary injunction, and grant Zhang's motion for a preliminary injunction.

1

## FACTUAL BACKGROUND

Zhang is a resident of China who owns and operates an e-commerce business that sells knives and other shearing goods to consumers in the United States. (Compl. ¶ 5; Declaration of Long Zhang ("Zhang Decl.") (Dkt. No. 16-1) ¶ 2.) Many of Zhang's products bear the huusk Mark, which has the following appearance:

# huusk

(Zhang Decl. ¶ 2; Compl. ¶ 7.) On August 31, 2021, Zhang applied to register the huusk Mark with the United States Patent and Trademark Office ("USPTO"). (Compl. ¶ 7.) On February 22, 2022, the USPTO published the huusk Mark for opposition in its official gazette. (*Id.* ¶ 10.) No party opposed this registration, and it was finalized on May 24, 2022. (*Id.*; *see* Plaintiff's Response in Opposition to Defendant's Motion For a Preliminary Injunction ("Pl.'s Prelim. Inj. Opp'n.") (Dkt. No. 50) at 9.) The huusk Mark's registered information is as follows:

| REGISTRATION NUMBER | REGISTERED TRADEMARK | INTERNATIONAL CLASS |
|---|---|---|
| 6,724,851 | huusk | 8 (Sabers being swords; Chef knives; Electric beard trimmers; Foot care implements, namely, foot scrapers; Gardening shears and scissors; Kitchen knives; Knives, forks, and spoons being tableware; Paring knives; Pocket knives; Scaling knives; Scissors for children; Scissors for household use; Sewing scissors; Sport knives; Utility knives) |

(Compl. ¶¶ 9–10; Dkt. No. 1-2.) Initially, the published registration identified July 25, 2021, as the date of the huusk Mark's "first use in commerce." (Compl. ¶ 7; Dkt. No. 1-2.) Almost two months prior to filing this suit, Zhang filed a request to amend the registration to provide a first use in commerce date of February 12, 2020. (Dkt. No. 36-10 at 2.) In support of his request,

Zhang submitted a screenshot of a product listing for a huusk-branded knife on Amazon.com, which indicated that the knife was available for sale on February 12, 2020. (*Id.*; Zhang Decl. at 11.) The knife displayed on the product listing has a wooden handle and curved blade with a grip hole and a facsimile of the "huusk" logo near the bottom of the blade. (Zhang Decl. at 8.) Zhang asserts that he is the owner and operator of the seller account on which the product is listed. (*Id.* ¶¶ 2–3.) On January 10, 2023, the USPTO approved Zhang's amendment request and changed the first use in commerce date to February 21, 2020. *See* huusk, Registration No. 6724851, *as amended* January 10, 2023, *available at* https://tsdr.uspto.gov/documentviewer?caseId=sn97003902&docId=URC20221225060449#docI ndex=1&page=1 (last visited Mar. 27, 2023) ("Amended Registration").

Defendant UAB is a Lithuanian commercial entity. (Compl. ¶ 6.) Like Zhang, UAB runs an online e-commerce business targeting consumers in the United States. (*Id.* ¶¶ 15–16.) UAB owns and operates the website www.huusk.com, which sells knives bearing the character mark "HUUSK." (*Id.* ¶ 15; Dkt. Nos. 16-4, 33-1.) This mark is nearly identical to the huusk Mark used by Zhang. (*See, e.g.*, Dkt. No. 1-4 at 3–4.) Likewise, the knives UAB displays for sale on its website are virtually identical to the products sold by Zhang. (*Id.*; Compl. ¶ 16; Zhang Decl. at 8.) UAB does not dispute these similarities. (*See generally* Def.'s Rule 12(b)(6) Mem.; Defendant's Memorandum in Opposition to Plaintiff's Motion for Entry of a Preliminary Injunction (Dkt. No. 36) ("Def.'s Prelim. Inj. Opp'n").) Instead, UAB claims that it is the original creator and owner of the rights to the huusk Mark. (Def.'s Rule 12(b)(6) Mem. at 7–9.) UAB asserts that it created the "HUUSK" concept in 2020, purchased the domain name www.huusk.com on July 30, 2020, and launched a marketing campaign and began sales of "HUUSK" products to U.S. consumers in early 2021. (Dkt. Nos. 33-1 to 33-5.) Later in 2021,

UAB also registered the character mark "HUUSK" with regulators in the European Union and the United Kingdom. (Dkt. Nos. 33-6 to 33-8).

However, UAB was unable to register the HUUSK mark in the United States. On November 1, 2021, UAB filed an application to register the following mark with the USPTO:

# HUUSK

(Dkt. No. 1-2.) The USPTO denied UAB's request based on a likelihood of confusion with Zhang's registered huusk Mark. (Dkt. No. 1-4.) The USPTO found that the two marks were identical, as were the goods being sold, and that consumers would likely be confused, mistaken, or deceived as to the commercial source of the goods. (*Id.* at 3–4.) To date, UAB does not have a license or any other form of authorization from Zhang to use the "HUUSK" mark in the United States. (Compl. ¶ 13.)

## PROCEDURAL BACKGROUND

In his Complaint, Zhang alleges that UAB infringed on his trademark rights by marketing and selling counterfeit "HUUSK" products to Illinois residents and other consumers in the United States. (*Id.* ¶¶ 26–27.) The Complaint includes a screenshot of an allegedly infringing "HUUSK" product that UAB allegedly offered for sale on www.huusk.com. (*Id.* ¶ 16.) Zhang moved for an *ex parte* temporary restraining order to prevent UAB from using the website to sell counterfeit huusk products. (Dkt. No. 8.) We entered a temporary restraining order which, among other things, ordered the domain name registries for www.huusk.com to disable the

website and make it inactive and untransferable until further order.  (Dkt. No. 13 ¶ 2.)  Shortly

thereafter, Zhang filed his motion for a preliminary injunction.  (Dkt. No. 15.)

UAB responded by moving to dismiss Zhang's Complaint under Rule 12(b)(6).  (Dkt.

No. 32.)  The company contends that it began using and marketing the huusk Mark prior to

Zhang, and therefore has superior common law rights in the mark.  (Def.'s Rule 12(b)(6) Mem.

at 7–9.)  UAB also asserts that Zhang's registration of the huusk Mark was fraudulently

procured.  (*Id.* at 9–14.)  The company later filed its own motion for a preliminary injunction,

raising largely the same theories that it raised in its motion to dismiss.  (Dkt. No. 46.)  UAB has

not answered the Complaint or asserted any counterclaims against Zhang.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to test the

sufficiency of the complaint, not to decide the merits of the case.  *McReynolds v. Merrill Lynch

& Co.*, 694 F.3d 873, 878 (7th Cir. 2012); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th

Cir. 1990).  In evaluating a motion to dismiss, courts "construe the complaint in the light most

favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all

possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)

(citation omitted).  Courts may grant a motion to dismiss under Rule 12(b)(6) only if a complaint

lacks sufficient facts "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Although a facially plausible complaint need not give "detailed factual allegations," it must

allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S.

at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).

"A preliminary injunction is an extraordinary remedy [that is] never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "To obtain a preliminary injunction, a plaintiff must show that it is likely to succeed on the merits, and that traditional legal remedies would be inadequate, such that it would suffer irreparable harm without the injunction." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). "If the plaintiff makes this showing, the court weighs the harm of denying an injunction to the plaintiff against the harm to the defendant of granting one." *Id.* "This balancing process involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Where appropriate, this balancing process should also include considering the public interest, *i.e.*, "any effects that granting or denying the preliminary injunction would have on nonparties." *Cassell v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021) (quotation marks omitted).

## ANALYSIS

### I. UAB's Motion to Dismiss

We first address UAB's motion to dismiss Zhang's trademark infringement claim. To state a claim for trademark infringement under 15 U.S.C. § 1114, a plaintiff must plausibly allege (1) that he has a protectable ownership interest in a valid mark, and (2) that the defendant's use of that mark is likely to cause confusion among consumers. *Phx. Entm't Partners v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016). At the pleading stage, "[t]he mere presence of a potential affirmative defense does not render the claim for relief invalid," and "a

6

plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (internal citations omitted).

We find that the allegations set forth in the Complaint are sufficient to state a claim for trademark infringement. First, Zhang has adequately alleged that he has a protectable ownership interest in the huusk Mark and that the mark is valid. A registered mark is "*prima facie* evidence of the validity of the . . . mark . . . and of the registrant's exclusive right to use the mark in commerce." *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001) (quoting 15 U.S.C. § 1057(b)). The Complaint states that Zhang registered the huusk Mark with the USPTO on May 24, 2022, and a copy of the published registration is attached as an exhibit. (Compl. ¶ 7; Dkt. No. 1-2.)

Second, Zhang has adequately alleged that UAB used the mark in a manner that is likely to cause confusion among consumers. "A court presumes likelihood of confusion when a defendant has produced counterfeit goods in an attempt to capitalize on the popularity of another's product." *Ent. One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 949 (N.D. Ill. 2019) (citing *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007)). A "counterfeit" product is one that is produced by an entity not authorized to use the mark at the time the goods were manufactured and which bears "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. §§ 1116(d)(1)(B), 1127.

Zhang plausibly alleges that UAB advertised and sold counterfeit huusk products on www.huusk.com. (Compl. ¶ 16.) Zhang asserts that he never granted UAB permission or license to use the huusk Mark. (*Id.* ¶¶ 13, 22.) The Complaint includes a screenshot from UAB's website, showing that in 2022, UAB offered a knife for sale in the United States bearing a logo that is nearly identical to the huusk Mark. (*Id.* ¶ 16.) These allegations alone are

7

sufficient to plausibly allege that UAB is selling counterfeit goods that are likely to cause confusion among consumers. *See Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.*, 707 F.3d 869, 871 (7th Cir. 2013) (noting that if the defendant's work bore the same name as the plaintiff's, "allegations of confusion . . . could be omitted from the complaint").

Additionally, Zhang's Complaint refers to the USPTO's office action denying UAB's attempt to register the "HUUSK" mark due to likelihood of confusion with Zhang's huusk Mark. (Compl. ¶¶ 17–23.) The USPTO found that the two marks were nearly identical, the goods at issue were the same, and that consumers were likely to confuse UAB's proposed "HUUSK" mark with the huusk Mark. (*Id.*; Dkt. No. 1-4.) The findings contained in USPTO's office action, when considered along with the other allegations in the Complaint, are sufficient to plausibly allege the likelihood of confusion element of Zhang's trademark infringement claim. *See Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 864 (N.D. Ill. 2009).

UAB does not contest the sufficiency of these allegations. Instead, UAB argues that it used the "HUUSK" mark prior to Zhang and therefore has superior common law rights in the mark. (Def.'s Rule 12(b)(6) Mem. at 7–9); *see also S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, 835 F.3d 660, 665 (7th Cir. 2016) ("[A] trademark application is always subject to previously established common law trademark rights of another party."). UAB also argues that Zhang fraudulently obtained his trademark registration, which is a basis for contesting or cancelling the mark. (Def.'s Rule 12(b)(6) Mem. at 9–14); *see* 15 U.S.C. §§ 1064(3), 1115(b)(1).

Both of UAB's arguments, however, are affirmative defenses. *See, e.g.*, *Pure Imagination, Inc. v. Pure Imagination Studios, Inc.*, No. 03 C 6070, 2004 WL 2967446, at *10 (N.D. Ill. Nov. 15, 2004) (noting that prior use is an affirmative defense); 6 McCarthy on

Trademarks and Unfair Competition ("McCarthy on Trademarks") § 31:59 (5th ed. Mar. 2023 update) (fraudulent procurement is an affirmative defense).  A party seeking to dismiss a claim at the outset of a case based on an affirmative defense should first raise the defense in its answer and then move for judgment on the pleadings under Rule 12(c).  *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022); *Burton v. Ghosh*, 961 F.3d 960, 964–65 (7th Cir. 2020); *H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 631–32 (7th Cir. 2020). Affirmative defenses may only be raised in a Rule 12(b)(6) motion if the facts required to support the defense appear on "the face of the complaint."  *Hyson*, 821 F.3d at 941; *766347 Ontario Ltd. v. Zurich Cap. Mkts., Inc.*, 249 F. Supp. 2d 974, 985 (N.D. Ill. 2003).

UAB has not answered Zhang's Complaint, and its attempt to assert affirmative defenses in support of a Rule 12(b)(6) motion is procedurally improper.  The facts that UAB relies on to support its theories of prior use and fraudulent procurement do not appear on the face of the Complaint, and UAB does not cite any rule or authority permitting these defenses to be raised in the context of a Rule 12(b)(6) motion.  We therefore do not consider them.[1]

We also decline to consider the extrinsic documents that UAB attaches in support of its motion to dismiss, which include screenshots of websites, foreign trademark registrations, invoices, and PayPal receipts.  (*See* Dkt. Nos. 33-1 to 33-13.)  Although "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim," this exception "is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment."

---

[1] *TWD, LLC v. Grunt Style LLC*, 598 F. Supp. 3d 676, 685 (N.D. Ill. 2022), which UAB argues is analogous to the present case (*see* Def.'s Rule 12(b)(6) Mem. at 9), is not to the contrary.  There, the district court addressed arguments concerning common law trademark rights in the context of summary judgment.  *Grunt Style LLC*, 598 F. Supp. 3d at 685.

*Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998); *Albany Bank & Tr. Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002) (same); *see also Harrison v. City of Chicago*, No. 22-CV-213, 2022 WL 1523621, at *1 (N.D. Ill. May 12, 2022) (refusing to consider extrinsic documents in the context of a Rule 12(b)(6) motion because even though "the documents may be central to [the defendant's] defense . . .they are neither referred to nor central to the plaintiffs' claims"). The exception for documents central to the plaintiff's claim is "narrow" and is "aimed at cases interpreting, for example, a contract." *Harrison*, 2022 WL 1523621, at *1 (quoting *Levenstein*, 164 F.3d at 347). UAB's arguments for dismissal do not deal primarily with document interpretation and do not implicate the narrow exception. Because the documents that UAB attaches are neither referred to in Zhang's Complaint nor central to his trademark infringement claim, we decline to consider them.

Finally, UAB requests in its reply brief that we convert its motion to dismiss into a motion for summary judgment. (Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Complaint ("Def.'s Rule 12(b)(6) Rep.") (Dkt. No. 43) at 2.) UAB forfeited this request by failing to include it in its initial memorandum in support of its motion to dismiss. *United States v. Adamson*, 441 F.3d 513, 521 n.2 (7th Cir. 2006). In any event, "[a] district court ultimately has discretion in determining whether to convert a motion to dismiss into a motion for summary judgment." *Macias v. Bakersfield Rest., LLC*, 54 F. Supp. 3d 922, 927 (N.D. Ill. 2014). We decline to convert UAB's Rule 12(b)(6) motion into a summary judgment motion at this preliminary stage, where there appear to be numerous disputed issues of fact for which the parties have not had an equal opportunity to present evidence.[2]

---

[2] In its reply, UAB also asks us to take judicial notice of the documents attached in support of its motion to dismiss. (Def.'s Rule 12(b)(6) Rep. at 2–3.) We decline to do so. A court may only take judicial notice of a fact that is both "not subject to reasonable dispute" and either (1)

In sum, viewing the allegations in the Complaint in the light most favorable to Zhang, we conclude that Zhang has stated a claim for trademark infringement. UAB's motion to dismiss is therefore denied.

## II.     UAB's Motion for a Preliminary Injunction

Next, we turn to UAB's motion for a preliminary injunction. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020) (quoting *Winter*, 555 U.S. at 20).

UAB's argument that it is entitled to a preliminary injunction mirrors the argument it advanced in support of its motion to dismiss. UAB argues that it possesses superior common law rights to the huusk Mark by virtue of its prior use. (Def.'s Prelim. Inj. Mem. at 6–9.) UAB contends that it developed and advertised the "HUUSK" mark before Zhang applied to register the huusk Mark. (Dkt. Nos. 47-1 to 47-9.) And UAB again asserts that Zhang's registration of the huusk Mark "is fraudulent and entitles Zhang to nothing." (Def.'s Prelim. Inj. Mem. at 1.) UAB argues that Zhang's "use" of and "attempt[] to control" the huusk Mark will result in irreparable harm if injunctive relief is not granted. (*Id.*)

UAB's motion fails. As an initial matter, a preliminary injunction "is a procedural device, not a cause of action." *First Classics, Inc. v. Jack Lake Prods., Inc.*, No. 17-CV-01996, 2018 WL 1427125, at *3 (N.D. Ill. Mar. 22, 2018) (internal citation omitted). Thus, a party may

---

"generally known within the territorial jurisdiction of the trial court" or (2) "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (citing Fed. R. Evid. 201(b)). None of the documents at issue satisfy this standard. UAB's request is also untimely, as it was raised for the first time in its reply brief. *See Adamson*, 441 F.3d at 521 n.2.

only seek injunctive relief on a claim that is at issue in the litigation and not "a matter lying wholly outside the issues in the suit." *Nw. Pallet Supply Co. v. Peco Pallet, Inc.*, No. 3:15-CV-50182, 2016 WL 8671902, at *3 (N.D. Ill. May 13, 2016) (citing *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)).

Although UAB has raised its fraudulent procurement and prior use theories in every responsive paper it has filed in this case, it has not asserted any counterclaims against Zhang. Where, as here, a defendant seeks preliminary injunctive relief without first filing a counterclaim, federal courts routinely deny the relief requested. *See Profil Institut Fur Stoffwechselforschung GmbH v. ProSciento, Inc.*, No. 16CV1549-LAB (BLM), 2017 WL 1394089, at *1 (S.D. Cal. Feb. 28, 2017) ("Federal courts can issue preliminary injunctions only to the extent they pertain to pending underlying claims . . . . Where, as here, the party is bringing no claims, there is no basis for issuance of a preliminary injunction. And in fact, the Court lacks authority to do so.") (citations omitted); *Kraemer v. Fox Hills Owners Ass'n*, No. 15-CV-02189 (MJW), 2016 WL 1383473, at *1 (D. Colo. Apr. 7, 2016) (denying defendant's motion for a preliminary injunction "for the simple fact that it hasn't asserted any counterclaims on which to succeed"). Because UAB has not yet advanced an underlying claim upon which it is seeking relief, it is not entitled to an injunction.[3]

Additionally, "[d]elay in pursuing a preliminary injunction may raise questions regarding the [party's] claim that he or she will face irreparable harm if a preliminary injunction is not

---

[3] For the same reason, we reject UAB's request to cancel the huusk Mark based on fraud. (Def.'s Prelim. Inj. Mem. at 9–12.) Even if we could consider UAB's request, UAB has failed to make a necessary showing that the mark is invalid (as discussed below in connection with Zhang's motion for a preliminary injunction). Mere allegations of prior use, without a predicate determination of invalidity, are insufficient grounds for cancelling a trademark. *See Uncommon, LLC v. Spigen, Inc.*, No. 15 C 10897, 2016 WL 3997597, at *5 (N.D. Ill. July 26, 2016).

entered." *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001). Even if UAB could seek preliminary injunctive relief without asserting an underlying claim, UAB waited more than four months after Zhang filed this lawsuit and more than five months after the USPTO denied its application for registration of the "HUUSK" mark to file its preliminary injunction motion. UAB also failed to oppose Zhang's registration of the huusk Mark within thirty days after its publication, as required by statute. (*See* Pl.'s Prelim. Inj. Opp'n at 9); 15 U.S.C. § 1063(a). Nor did it take any action to oppose Zhang's request to amend his first use date. "Equity helps those who help themselves." *ML Fashion, LLC v. Nobelle GW, LLC*, No. 20-CV-5124, 2021 WL 170741, at *7 (N.D. Ill. Jan. 19, 2021) (collecting cases). UAB's delay and inaction with respect to contesting Zhang's registration and filing its motion for a preliminary injunction suggests that there is no risk of irreparable harm, which is an independent reason for denying the requested relief. *See, e.g.*, *Redbox Automated Retail, LLC v. Xpress Retail LLC*, 310 F. Supp. 3d 949, 955 (N.D. Ill. 2018) (no irreparable harm where plaintiff delayed filing its trademark infringement suit for three months after sending cease and desist letter); *Ixmation, Inc. v. Switch Bulb Co., Inc.*, No. 14 C 6993, 2014 WL 5420273, at *8 (N.D. Ill. Oct. 23, 2014) (no irreparable harm where plaintiff waited four and a half months before filing its motion for a preliminary injunction); *Borden, Inc. v. Kraft, Inc.*, No. 84 C 5295, 1984 WL 1458, at *16 (N.D. Ill. Sept. 28, 1984) (finding no irreparable harm where moving party delayed for five months before filing motion).

Because UAB has not asserted a claim that entitles it to injunctive relief, and because the company's delay in bringing its motion for a preliminary injunction suggests that it will not suffer irreparable harm, we deny UAB's motion. *See, e.g.*, *Abbott Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992) (holding that "[i]f the moving party cannot establish either

13

[likelihood of success on the merits or irreparable harm], a court's inquiry is over and the injunction must be denied").

### III. Zhang's Motion for a Preliminary Injunction.

Finally, we address Zhang's motion for a preliminary injunction. As already noted, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Pritzker*, 973 F.3d at 762 (quoting *Winter*, 555 U.S. at 20). Moreover, "the mere fact that [a] complaint survived [a] Rule 12(b)(6) motion does not show a likelihood of success on the merits" for the purposes of issuing a preliminary injunction. *Amari* Co. *v. Burgess*, No. 07 C 1425, 2008 WL 268698, at *4 (N.D. Ill. Jan. 28, 2008).

Zhang asks us to extend the relief that we granted in our temporary restraining order until an adjudication on the merits of his claim. (*Compare* Dkt. No. 8 *with* Dkt. No. 15; *see also* Pl.'s Prelim. Inj. Mem. at 2.) He argues that, as the registered owner of the huusk Mark, he is entitled to an injunction to prevent UAB from selling counterfeit products on its website. (Pl.'s Prelim. Inj. Mem. at 7–8.) Zhang contends that he has a likelihood of success on the merits because (1) his registration of the huusk Mark and his use of the mark in commerce establishes a valid ownership interest in the mark, and (2) the similarity of the products creates a likelihood of confusion. (*Id.*) In a declaration submitted in support of his motion, Zhang states that he will suffer irreparable harm without an injunction because UAB's continued infringement will diminish the goodwill associated with the huusk Mark, damage the brand's reputation, and reduce future sales. (Zhang Decl. ¶ 10.) In response, UAB repeats its argument that its own use of the "HUUSK" mark predates Zhang's registration, thus giving it superior common law rights

14

in the character mark.  (Def.'s Prelim. Inj. Opp'n at 8–11.)  UAB also argues that Zhang's

registration of the huusk Mark is fraudulent.  (*Id.* at 4–5.)

### A.      Likelihood of Success on the Merits

We first address whether Zhang has demonstrated a likelihood of success on the merits of

his trademark infringement claim.  To demonstrate a likelihood of success on the merits, "a

"possibility of success is not enough" and "[n]either is a better than negligible chance."  *Pritzker*,

973 F.3d at 762.  Although the moving party "need not show that it definitely will win the case,"

a "strong showing" of a likelihood of success on the merits "normally includes a demonstration

of how the applicant proposes to prove the key elements of its case."  *Id.*  This does not require

the moving party to show that they will prevail by a preponderance of the evidence, however,

because "that would spill too far into the ultimate merits for something designed to protect both

the parties and the process while the case is pending."  *Id.* at 763; *see also Ty, Inc.*, 237 F.3d at

902 (affirming grant of a preliminary injunction where the plaintiff had "about a 50-50 chance of

likelihood of success on the merits").

Here, Zhang must demonstrate that he is likely to succeed in establishing (1) an

ownership interest in a valid, protectible mark and (2) a likelihood of confusion caused by

UAB's infringement.  *Phx. Entm't Partners*, 829 F.3d at 822.  We address each element in turn.

### 1.      Ownership and Validity of the huusk Mark

"In determining whether a party has established rights in a trademark, we take into

account all relevant facts."  *Nutraceutical Corp.*, 835 F.3d at 666.  A registered mark is "*prima

facie* evidence of the validity of the . . . mark . . . and of the registrant's exclusive right to use the

mark in commerce."  *Packman*, 267 F.3d at 638 (quoting 15 U.S.C. § 1057(b)).  However, "[t]he

party who first uses a mark in commerce is said to have priority over other users."  *RGB Plastic,*

*LLC v. First Pack, LLC*, 184 F. Supp. 3d 649, 670 (N.D. Ill. 2016). "A wide variety of sources may demonstrate 'use' sufficient for public identification of a mark, including advertising brochures, catalogs, newspaper ads, and articles in newspapers and trade publications, as well as in media outlets such as television and radio." *Nutraceutical Corp.*, 835 F.3d at 666 (internal citations omitted). "Evidence of actual sales is not necessary to establish ownership." *Id.* (quoting *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 434 (7th Cir. 1999)).

Zhang argues that his use of the huusk Mark in commerce predates UAB's use, thus giving him superior rights in the mark. (Pl.'s Prelim. Inj. Mem. at 7); *Packman*, 267 F.3d at 638. He asserts that he first used the huusk Mark in commerce in February 2020. To support this first use date, Zhang submits a screenshot of a huusk-branded knife offered for sale on Amazon.com. (Zhang Decl. at 8.) In his declaration, Zhang states that he is the owner of the Amazon.com seller account that listed the product. (*Id.* ¶¶ 2–3.) The screenshot indicates that the product was "first available" on Amazon.com on February 12, 2020. (*Id.* at 11.) Zhang argues that this product listing is sufficient to establish that he used the mark in commerce. (Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Entry of a Preliminary Injunction ("Pl.'s Prelim. Inj. Rep.") (Dkt. No. 38) at 3); *see also* 15 U.S.C. § 1127 ("[A] mark shall be deemed to be in use in commerce on goods when it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto.").

Zhang also relies on his registration of the huusk Mark to establish his prior ownership. (Pl.'s Prelim. Inj. Rep. at 3.) We take judicial notice of the fact that, on January 10, 2023, the USPTO approved Zhang's amendment request, and the published registration for the huusk Mark lists the first use in commerce date as February 21, 2020. *See* Amended Registration; Fed. R. Evid. 201(c)(1); *Slep–Tone Entm't Corp. v. Kalamata, Inc.*, 75 F. Supp. 3d 898, 904 (N.D. Ill.

2014) ("The Court may properly take judicial notice of official records of the United States Patent and Trademark Office.") (citation omitted).

UAB disputes Zhang's claim of ownership and insists that it has a superior common law right to the huusk Mark due to prior use. (Def.'s Prelim. Inj. Opp'n at 8–11.) We can now consider the merits of this argument. *See, e.g.*, *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, No. 02 C 2523, 2003 WL 22225594, at *2 (N.D. Ill. Sept. 24, 2003) (considering mitigating defenses in connection with addressing likelihood of success on the merits). To establish priority in a trademark via prior use, "a party must show first, adoption, and second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Fabick, Inc. v. JFTCO, Inc.*, 944 F.3d 649, 656 (7th Cir. 2019) (internal citations omitted). The party asserting prior use bears the burden of proof. *Pure Imagination*, 2004 WL 2967446, at *10. UAB presents evidence that it (1) purchased the domain name www.huusk.com on July 30, 2020, (2) created a Facebook page on February 9, 2021 to market "HUUSK" products, (3) sold 11 "HUUSK" products in six transactions to U.S. consumers beginning in March 2021, and (4) registered the character mark "Huusk" with European regulators in 2021. (Dkt. Nos. 36-2, 36-4 to 36-9.)

As an initial matter, we agree with Zhang that evidence of UAB's use and registration of the mark outside of the United States is irrelevant. "Prior use of a trademark in a remote geographic area does not justify the cancellation of a second user's trademark rights acquired in good faith." *Spigen, Inc.*, 2016 WL 3997597, at *4 (internal citations omitted). Because Zhang's allegations are premised on infringement in the United States, we consider only evidence of prior use in the United States.

We find that the remainder of UAB's evidence fails to demonstrate that UAB used the huusk Mark in commerce in the United States before Zhang. The Amazon.com listing submitted by Zhang indicates that he used the huusk Mark in commerce in the United States in February 2020—months before UAB purchased the www.huusk.com website, nearly a year before UAB launched its Facebook marketing campaign, and more than a year before UAB sold any "HUUSK" products to U.S. consumers. Moreover, the USPTO found that the product listing that Zhang submitted was sufficient to establish a date of first use in February 2020. *See* Amended Registration.

UAB argues that listing a product for sale on Amazon.com is not a *bona fide* use in commerce or that it constitutes a *de minimis* use. (Def.'s Prelim. Inj. Opp'n at 11–12.) We disagree. "So long as the trademarked goods or services are actually provided through or in connection with it, 'a website that bears a trademark may constitute a *bona fide* use in commerce.'" *Nutraceutical Corp.*, 835 F.3d at 666 (quoting *Specht v. Google Inc.*, 747 F.3d 929, 934–35 (7th Cir. 2014)); *see also Jae Enters., Inc. v. Oxgord Inc.*, No. 5:15-CV-228-dTBR, 2016 WL 319877, at *4–5 (W.D. Ky. Jan. 25, 2016) (offering to sell goods on Amazon.com, with the mark displayed on the details page, establishes the "use in commerce" element of trademark infringement). The Amazon.com listing shows that Zhang offered goods bearing the huusk Mark for sale to U.S. consumers in February 2020. It is not fatal that Zhang has not provided any evidence of actual sales, because "[e]vidence of actual sales is not necessary to establish ownership." *Nutraceutical Corp.*, 835 F.3d at 666 (quoting *Johnny Blastoff*, 188 F.3d at 434).

UAB also claims that Zhang's use of the huusk Mark was not continuous. (Def.'s Prelim. Inj. Opp'n at 11–12.) But UAB has not presented any evidence to demonstrate that the

Amazon.com webpage containing the product listing was taken down or inactive at any point since February 2020. Regardless, it is UAB's (not Zhang's) burden to demonstrate that its prior use of the mark was sufficiently continuous to rebut the presumption of validity conferred by Zhang's registration. *See Pure Imagination*, 2004 WL 2967446, at *10 ("[T]he party without the federal registration must prove its prior and continuous rights in a market that preempts the registrant's constructive nationwide rights."). UAB fails to meet this burden for the reasons stated above.

Finally, UAB insists that the Amazon listing submitted by Zhang is a "fabrication" and implies that Zhang defrauded the USTPO, both by listing July 25, 2021, as the first use in commerce date on his initial application for registration of the huusk Mark, and by later claiming a first use in commerce date of February 12, 2020, in connection with his amendment request. (Def.'s Prelim. Inj. Opp'n at 4–5.) To establish fraudulent procurement, UAB must demonstrate that Zhang "deliberately attempted to mislead the [USPTO] by presenting materially false and misleading information when . . . appl[ying] for the[ ] trademark registration." *Slep-Tone*, 75 F. Supp. 3d at 903; *accord Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 670 (7th Cir. 1982). "A claim for fraudulent procurement of a trademark requires (1) [a] false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false (scienter); (3) the intention to induce action or refraining from action in reliance on the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5) damages proximately resulting from such reliance." *Slep-Tone*, 75 F. Supp. 3d at 903, *see also* 6 McCarthy on Trademarks § 31:61. Finally, "[t]he very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party."

19

*Life After Hate, Inc. v. Free Radicals Project, Inc.*, 410 F. Supp. 3d 891, 906 (N.D. Ill. 2019)

(quoting *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009)).

UAB has not met this high burden. First, UAB fails to demonstrate that Zhang made an intentionally false statement in his initial registration application. UAB submits "before and after" screenshots of the specimen website submitted in support of Zhang's registration, which indicate that the website's appearance website changed after the USPTO approved the registration. (Dkt. No. 47-13.) UAB also attaches a screenshot from a domain name verification site purporting to show that the specimen website was created on the date that Zhang first applied for registration and not prior to his initial first use in commerce date of July 25, 2021. (Dkt. No. 33-11 at 3.)

This evidence falls short of demonstrating fraud. The fact that a website's appearance changed after the registration was submitted and approved does not demonstrate that the applicant made a material misstatement on the application. Here, the before and after screenshots that UAB relies on do not support the inference that the first use in commerce date listed on the registration application was false. Moreover, while UAB insists that the website specimen was created on August 31, 2021, the application includes a screenshot of an invoice for a sale of a huusk product made on July 25, 2021. *See* huusk, TEAS Plus Application (filed on 08/31/2021), *available at* https://tsdr.uspto.gov/documentviewer?caseId=sn97003902&docId=FTK20210903092646#docI ndex=14&page=1 (last visited Mar. 29, 2023). UAB provides no evidence suggesting that this invoice is fake.

UAB also fails to demonstrate that Zhang made an intentionally false statement in his amendment application. UAB argues that the Amazon.com product listing that Zhang submitted

20

in connection with his amendment request is fabricated.  (*See, e.g.*, Def.'s Prelim. Inj. Opp'n at

5.)  In support, it cites to a single post on an Amazon.com seller forum indicating that one can

manipulate product listings by purchasing a previously registered Amazon Standard

Identification Number (ASIN) and editing the accompanying product information.  (*Id.* at 5 n.4.)

The mere possibility of such manipulation, however, is not evidence that Zhang altered the

product listing.  Zhang submitted a sworn statement in connection with his application to modify

the registration in which he asserts, under penalty of fines or imprisonment, that all of the

information contained in his amendment request, including the February 2020 first use in

commerce date, was accurate.  (Dkt. No. 36-10 at 19.)  Nor do the circumstances suggest, as

UAB implies elsewhere, that Zhang amended his first use in commerce date in response to this

litigation (*see, e.g.*, Def.'s Prelim. Inj. Mem. at 11 n.7), because Zhang's amendment request

predated the filing of this suit by nearly two months.  Absent specific, non-speculative evidence

demonstrating that Zhang defrauded the USPTO, we cannot conclude that Zhang's Amazon.com

listing and the information contained therein is a fabrication or that Zhang fraudulently obtained

his trademark registration.

After considering all the evidence submitted by the parties, we find that Zhang is likely to

succeed in establishing ownership of a valid trademark by virtue of his registration and use in

commerce of the huusk Mark, even in view of UAB's arguments concerning prior use and

fraudulent procurement.  Zhang has therefore demonstrated a likelihood of success on the merits

on the first element of his trademark infringement claim.

### 2.    Likelihood of Confusion

Next, we address the second element of Zhang's trademark infringement claim,

likelihood of confusion.  We assess likelihood of confusion in light of seven factors:

"(1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) whether actual confusion exists; and (7) whether the defendant intended to 'palm off' his product as that of the plaintiff." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008) (quoting *Packman*, 267 F.3d at 642). "No single factor is dispositive" and "[c]ourts may assign varying weights to each of the factors depending on the facts presented." *Id.* Nonetheless, "the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the 'most important factors' in a likelihood of confusion case." *Ty, Inc.*, 237 F.3d at 898 (internal citations omitted).

Zhang has satisfied the majority of the *Autozone* factors. First, Zhang has established that the huusk Mark and UAB's "HUUSK" mark are similar. Zhang submitted a screenshot of the www.huusk.com website showing that UAB marketed and sold knives bearing the "HUUSK" mark. (Dkt. No. 16-4). This mark contains the same characters as the huusk Mark and is virtually identical to the mark that appears on the product listing attached to Zhang's declaration. (*Compare id. with* Zhang Decl. at 8.) Second, the products being sold by Zhang and UAB are substantially indistinguishable. Both UAB's knives and Zhang's knives have a wooden handle, a similar curved shape, a grip hole in the blade, and the "huusk" logo appearing near the bottom of the blade. (*Compare* Dkt. No. 16-4 *with* Zhang Decl. at 8.) Although we are not bound by their conclusion, we agree with the USPTO that the marks and accompanying products are identical . (Dkt. No. 1-4 at 4.) UAB does not dispute this conclusion. (*See* Def.'s Prelim. Inj. Opp'n.)

The third and fourth *Autozone* factors also weigh in Zhang's favor. Both Zhang and UAB present evidence indicating that they sell and market their products online to consumers in the United States. (Zhang Decl. ¶ 2; Dkt. No. 36-5.) The products bearing the huusk Mark are

widely available and relatively inexpensive, and their purchasers are not necessarily sophisticated. *Am. Nat'l Ins. Co. v. Am. Nat'l Inv. Advisors, LLC*, No. 11-CV-4016, 2014 WL 6613342, at \*13 (N.D. Ill. Nov. 21, 2014) ("[T]he more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases.") (internal citations omitted). Where, as here, the "relevant class of consumers . . . consists of internet users," that "group encompasses the full range of purchasers," and "the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Deckers Outdoor Corp. v. The P'ships & Unincorp. Ass'ns Identified on Schedule "A"*, No. 13 C 2167, 2013 WL 1337616, at \*4 (N.D. Ill. Mar. 27, 2013) (internal citations omitted). The fact that some consumers may be aware that the "HUUSK" mark is a knockoff is of little consequence because less sophisticated consumers may draw a different conclusion. *See id.*

Next, we turn to the fifth *AutoZone* factor, the strength of the mark. "The 'strength' of a trademark refers to the mark's distinctiveness, meaning its propensity to identify the products or services sold as emanating from a particular source." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 684 (7th Cir. 2001). This factor weighs slightly in Zhang's favor. Zhang offers evidence indicating that he made sales of huusk knives through his Amazon.com storefront and received hundreds of positive reviews, indicating that a significant number of consumers identified the brand with his business. (Zhang Decl. ¶¶ 2–6.) The huusk Mark is distinctive because it is a unique term with no independently recognizable meaning. 6 McCarthy on Trademarks § 11:6 (coined marks are indicative of trademark strength); *see also* Dkt No. 36-9 ("The wording 'HUUSK' has no meaning in a foreign language").

Finally, the circumstances indicate that UAB may have intended to "palm off" its "HUUSK" products as Zhang's. Zhang asserts that UAB is a "direct business competitor" targeting the same consumers as Zhang, a characterization that UAB does not dispute. (Zhang Decl. ¶ 9; *see* Def.'s Prelim. Inj. Opp'n.) Moreover, the evidence submitted by Zhang indicates that UAB continued to sell "HUUSK" products on its website even after it received the USTPO's office action denying registration of the "HUUSK" mark due to likelihood of confusion with Zhang's huusk Mark. *See Ty, Inc. v. Softbelly's, Inc.*, No. 00 C 5230, 2007 WL 734394, at *3 (N.D. Ill. Mar. 6, 2007), *aff'd*, 517 F.3d 494 (7th Cir. 2008) (finding that defendant's continued infringement after notice from the USTPO that product was confusingly similar to plaintiff's indicated intent to deceive). While not conclusive, we find that this factor weighs slightly in Zhang's favor as well.

Thus, six of the seven *Autozone* factors weigh in Zhang's favor. To be sure, Zhang has not presented evidence of actual consumer confusion. But such evidence is not necessary to prevail on a motion for a preliminary injunction. *See Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111, 1119 (7th Cir. 1997). We also find it probative (although not dispositive) that the USTPO denied UAB's application to register its own "HUUSK" mark based on likelihood of confusion with the huusk Mark. *See, e.g., Ty, Inc. v. Softbelly's Inc.*, No. 00 C 5230, 2006 WL 5111124, at *12 (N.D. Ill. Apr. 7, 2006) ("Although determinations of the USTPO are not conclusive on the issue of likelihood of confusion, its decisions to refuse registrations are entitled to 'great weight.'" (internal citations omitted)); *Richardson v. Cascade Skating Rink*, No. CV 19-8935-NLH-MJS, 2022 WL 2314836, at *4 (D.N.J. June 28, 2022) ("[The] USTPO's findings . . . while not binding, [are] nonetheless persuasive" as to why defendant's alleged infringement "is highly likely to cause consumer confusion"). Finally, UAB

effectively "concedes that the likelihood of confusion must be high" by failing to present any "substantive argument addressing this element." *Mechling v. Operator of Website Muaythaifactory.com*, No. 21-CV-01538, 2021 WL 3910752, at *7 (N.D. Ill. Sept. 1, 2021).

Considering all the evidence submitted by the parties, we find that Zhang has demonstrated a likelihood of success on the merits on both elements of his trademark infringement claim.

### B.     Irreparable Harm and Adequacy of Legal Remedy

Because Zhang has established a likelihood of success on the merits, we next must address whether Zhang will suffer irreparable harm absent preliminary injunctive relief. *See Life Spine*, 8 F.4th at 545. "Harm is irreparable if legal remedies are inadequate to cure it," meaning "the remedy must be seriously deficient as compared to the harm suffered." *Id.* (quoting *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003)). When a plaintiff moves for a preliminary injunction based on a claim for trademark infringement under the Lanham Act, the plaintiff is "entitled to a rebuttable presumption of irreparable harm upon a finding . . . of likelihood of success on the merits." 15 U.S.C. § 1116(a); *see also Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013) ("[I]rreparable harm is especially likely in a trademark case because the difficulty of quantifying the likely effect on a brand of a nontrivial period of consumer confusion (and the interval between the filing of a trademark infringement and final judgment is sure not to be trivial).").

Here, Zhang is entitled to a presumption of irreparable harm because he has demonstrated a likelihood of success on the merits of his trademark infringement claim. Additionally, Zhang stated in his declaration that, absent injunctive relief, he is likely to suffer irreparable harm through diminished goodwill and brand confidence, damage to the huusk Mark's reputation, loss of exclusivity, and loss of future sales. (Zhang Decl. ¶¶ 10–11.) The Seventh Circuit has

"repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (collecting cases). Indeed, the "most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods." *Id.*

In response, UAB does not present any evidence to overcome the presumption of irreparable harm. Instead, UAB characterizes Zhang's declaration as "self-serving" and "conclusory" because it does not specify the alleged loss of goodwill with particularity, describe Zhang's standards of quality, or provide "substantive evidence" to quantify the amount of harm that Zhang would suffer absent an injunction. (Def.'s Prelim. Inj. Opp'n at 13.) But this lack of specificity is not necessarily problematic. The Seventh Circuit has stressed that it is difficult to quantify the effect of consumer confusion on a brand. *See Kraft Food Grp. Brands*, 735 F.3d at 741; *Checker Car Club of Am., Inc. v. Fay*, 262 F. Supp. 3d 621, 629 (N.D. Ill. 2017) ("[I]t is nearly impossible to calculate the precise economic harm caused by damage to goodwill and reputation on account of [trademark] infringement."). Here, where Zhang is already entitled to a presumption of irreparable harm based on his likelihood of success on the merits, and where UAB has failed to present evidence to rebut this presumption, we find that he is not required to precisely quantify the amount of harm that he would suffer in the absence of injunctive relief. *See USA-Halal Chamber of Com., Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 438 (N.D. Ill. 2019) ("[A]llowing third parties to slap [the plaintiff's] trademark or a similarly confusing mark on its products when [the plaintiff] has not certified them represents a real harm . . . that is difficult to quantify."). We find that Zhang has established a likelihood of irreparable harm for which there is no adequate remedy at law.

26

C.       **Balancing the Equities**

Finally, we must balance the potential harm to Zhang if a preliminary injunction is not granted against the harm that UAB would suffer if a preliminary injunction is granted. To address this question, we "employ[] a sliding scale approach." *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018). "The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor." *Id.*

The balance of the harms weighs substantially in Zhang's favor. On one side of the balance, the integrity of Zhang's brand will be damaged if UAB is not enjoined from selling counterfeit products. (Zhang Decl. ¶¶ 10–11.) On the other side of the balance, there is little, if any, evidence that UAB would be significantly harmed by a preliminary injunction. UAB has made no attempt to quantify how much revenue or website traffic it would lose if a preliminary injunction is granted in Zhang's favor. UAB claims that it will be harmed by "lost revenue" if an injunction is entered (Def.'s Prelim. Inj. Opp'n at 13), but its evidence indicates that it sold only eleven products in the United States, realizing a total revenue of less than $500. (Dkt. No. 36-5.) Because much of UAB's business appears to take place outside of the United States, it is unlikely that it will be materially harmed if it is prohibited from making any further sales in the United States during the pendency of the case. Moreover, if UAB prevails on the merits, an appropriate bond will compensate it for its loss. *Gateway E. Ry., Co. v. Terminal R.R. Assoc. of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994).

In connection with balancing the harms, courts may also consider the public interest in deciding whether to grant injunctive relief. *Winter*, 555 U.S. at 20. The public has an interest in maintaining the integrity of trademark laws. *See Lettuce Entertain You Enters., Inc. v. Leila Sophia AR, LLC*, 703 F. Supp. 2d 777, 791 (N.D. Ill. 2010) ("Enforcement of trademark law serves the public interest by reducing consumer confusion."); *see also Park 'N Fly, Inc. v. Dollar*

*Park & Fly, Inc.*, 469 U.S. 189, 193 (1985) ("Because trademarks desirably promote competition and the maintenance of product quality, Congress determined that a sound public policy requires that trademarks should receive nationally the greatest protection that can be given them.") (quotation omitted); *Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914, 917 (7th Cir. 1950) ("It must be remembered that the trade-mark laws . . . are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit.").

Consumers have an interest in receiving accurate and reliable information about products bearing the huusk Mark. Allowing two competing companies to control the huusk Mark while this litigation is pending would cause further confusion as to the origin and quality of huusk branded goods. The public also has an interest in ensuring that those whose trademark registrations are reviewed and approved by the USPTO receive the protection that registration confers. Zhang applied for and registered his mark, while UAB failed to contest this registration.

In conclusion, we find that strength of Zhang's likelihood of success on the merits, combined with the balance of the harms weighing in his favor, demonstrates that an injunction is warranted. Although Zhang has not conclusively demonstrated that he will prevail on the merits, he has made a "strong" showing by presenting some of the evidence that he plans to rely on at trial and by offering arguments to rebut UAB's opposing evidence. At this stage, considering the other factors addressed above, we find that the public interest would be best served by granting a preliminary injunction in favor of Zhang.

### D. Bond

Because Zhang is entitled to preliminary injunctive relief, we must consider the amount of security he must post. We may "issue a preliminary injunction . . . only if the movant gives security in an amount that [we] consider[] proper to pay the costs and damages sustained by any

party [later] found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *see also Ty, Inc. v. Publ'ns Int'l Ltd.*, 292 F.3d 512, 516 (7th Cir. 2002) ("The purpose of an injunction bond is to compensate the defendant, in the event he prevails on the merits.").

Neither party addressed the bond requirement in their briefs. Accordingly, we will give the parties the opportunity to do so in supplemental briefing. UAB shall have 21 days to submit a brief addressing whether the $1,000 bond Zhang already posted in connection with the previously entered temporary restraining order is sufficient. If UAB contends it is not sufficient, it should present argument as to what amount of security would be sufficient. If UAB submits a supplemental brief, Zhang will have 10 days to respond. No reply will be allowed. Each party shall limit the length of their briefs to 5 pages.

## CONCLUSION

For the foregoing reasons, UAB's motion to dismiss (Dkt. No. 32) and its motion for a preliminary injunction (Dkt. No. 46) are denied, and Zhang's motion for a preliminary injunction (Dkt. No. 15) is granted. UAB must answer Zhang's Complaint within 21 days of this Memorandum Opinion and Order. UAB also shall have 21 days to submit additional briefing on the appropriate amount of a bond. Zhang will have 10 days to respond to any such submission. Once the parties address the amount of the bond, we will issue the preliminary injunction via separate order pursuant to Federal Rule of Civil Procedure 65(d). The status hearing set for April 13, 2023, is stricken and reset to June 1, 2023, at 10:30 a.m.

_____
Marvin E. Aspen
United States District Judge

Dated: April 10, 2023